IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MALIK GREEN,

      Petitioner,

v.                                       CASE NO. 1:20-cv-70-MCR-GRJ

SECRETARY, FL. DEPT.
OF CORRECTIONS,

      Respondent.

_____/


## REPORT AND RECOMMENDATION

Petitioner Malik Green ("Green") is serving a twenty-five-year prison sentence and seeks a writ of federal habeas corpus pursuant to 28 U.S.C. § 2254, alleging eight grounds of ineffective assistance of trial counsel. The Petition challenges Green's Alachua County, Florida conviction and sentence on one count of burglary with a firearm while wearing a mask and one count of aggravated battery with a firearm causing great bodily harm, both of which occurred during a home invasion in Gainesville, Florida. ECF No. 1.

The Response in opposition points out that most of Petitioner's ineffective assistance claims were not exhausted and are, therefore, procedurally defaulted. ECF No. 8. Petitioner replied but failed to address

the exhaustion issue. ECF No. 21.  Upon careful review of the Petition, the

response, the reply, and the record, it is respectfully recommended that the

Petition is due to be denied.[1]

# I.    BACKGROUND

Green was initially charged by Criminal Complaint for breaking into a

Gainesville residence and shooting its occupant.[2]  The victim of the

shooting reports that two men kicked in the door of his home late in the

evening of December 11, 2012 with the intent to rob him of his drug stash.

Green, armed with a gun, forced his way into the home wearing a red

bandana facemask.  Green's out-of-state co-assailant was unmasked and

unarmed.  After the forced break-in, the victim fled, leaving his live-in

girlfriend alone in the home with their three young children.  The two

assailants gave chase and quickly apprehended and subdued the victim.

At gun point, the victim was brought back into the home where a fight broke

out.  The fight culminated in Green's shooting the victim once in the leg.

After the shooting, Green and his co-assailant fled the scene by car in

a vehicle resembling a Honda or Ford.  A next-door neighbor, who heard

---

[1] Because the Court may resolve the Petition by reviewing the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

[2] The facts of the case are set forth in Criminal Complaint, ECF No. 11-1 at 92-94, and Plaintiff's Motion for Post-Conviction Relief, ECF No. 11-6 at 281-313.

the gunshot, and the victim's girlfriend separately called 911.  Police

responded to the scene.  Twenty minutes later, a patrol officer spotted

Green and another man in a vehicle that matched the get-away car's

description, so he performed a traffic stop.  Inside Green's car, the

patrolman found a red bandana and other clothing items matching the

description of the clothing worn by the two suspects.

Law enforcement then transported a neighbor who witnessed one of

the suspects fleeing from the scene to the traffic stop location in the hopes

of making a positive identification.  The witness was not able to make a

positive identification at that time.  Upon returning home, however, the

witness sought out the patrol officer to let him know that he was certain that

the two men who had been stopped were, in fact, the ones who had fled

the shooting.

The victim was transported to the hospital with a leg wound.  The

victim did not immediately identify Green as the person who shot him.  But,

upon reflection, the victim determined that Green was, in fact, the person

who shot him.  The victim had known Green for more than ten years.

## II.   STATE COURT PROCEDURAL HISTORY

Green was charged by Information with three felony counts: (1)

burglary of a dwelling structure while armed with a firearm, in violation of

Fla. Stat. §§ 810.02(2)(b) and 778.087(2)(a); (2) aggravated battery using a deadly weapon inflicting great bodily harm, in violation of Fla. Stat. §§ 784.045(1)(a), 784.045(1)(a)(2) and 775.087(2)(a); and (3) possession of a concealed handgun as a convicted felon, in violation of Fla. Stat. § 790.23(1). ECF No. 11-1 at 103-104.[3] Green's co-defendant was also arrested and charged, and the trials were severed. ECF No. 11-7 at 258.

At a suppression hearing, Green argued that the police officer who made the vehicle stop on the night in question did not have reasonable suspicion to do so. ECF No. 11-7 at 206-249. Green argued that, as a result of the unlawful stop, the evidence gathered during the search following the stop must be suppressed. The evidence included Green's red bandana and other clothing items as well as the police officer's testimony that he observed the co-defendant's agitated state and bloody big toe. ECF No. 11-7 at 239. The trial court denied the motion to suppress. *Id*. at 249.

At trial, the State's case-in-chief included both eyewitnesses to the crimes, Green's co-defendant Burnice Jackson, III who pleaded guilty to the crimes, and the law enforcement officers who worked the case.

---

[3] Count three was bifurcated for a trial to be held after Petitioner stood trial on counts one and two. ECF No. 11-1 at 109.

First, the victim took the stand.  He testified repeatedly that Green was the man who invaded his home and shot him in the leg.  Direct Examination, ECF No. 11-2 at 207 ¶¶7-17, 214 ¶¶10-25; Cross Examination, ECF No. 11-2 at 251 ¶¶ 10-13, 2-22 & 257.  The victim further testified that he had known Green for more than ten years.  Direct Examination, ECF No. 11-2 at 207 ¶23, 214 ¶14; Cross Examination ECF, No. 11-2 at 257-258.  The victim testified to Green's height (6'2"-6'3"), his big eyes, and his light skin complexion, which assured the victim that the shooter was Green even though Green attempted to mask his lower face.  ECF No. 11-2 at 214.

On redirect, the State asked the victim if he had any doubt in his mind that Green was the man who entered his home and shot him, to which the victim replied, "No."  ECF No.11-2 at 275 ¶¶8-11.  The victim also identified photographs of Green's clothing as the items worn by the perpetrator during the commission of the crimes, *id*. at 226, and the victim confirmed that he picked Green out of a photo lineup shortly after the shooting.  *Id*. at 227.

The victim's live-in girlfriend identified the clothing worn by the perpetrators.  She also described the height of the two men who broke into

her home as follows: The man with the gun was significantly taller than the other perpetrator.  ECF No. 11-2 at 282-83.

One of the victim's neighbors testified that he heard a gunshot on the night in question.  He further testified that he saw a heavy-set man run away from the scene and hop into the front passenger seat of a car that resembled a Honda.  Once the passenger was inside the car, the car sped away.  *Id*. at 321-22.  After Green and his co-defendant were stopped by police twenty (20) minutes later, the neighbor testified that he was taken to the traffic stop location to see if he could identify the suspects.  Despite noting some consistencies with what he had seen, the neighbor could not make a positive identification at that time.  *Id*. at 326-27.  Later that evening, however, the neighbor realized that the car, the co-defendant, and clothing found inside the stopped vehicle all matched what he had seen that night and reported to police that he could now make a positive identification*.  Id.* at 328.

Law enforcement testimony included testimony from the patrol officer, who made the traffic stop on the night in question, and investigators who processed the crime scene and interviewed the victim.  The patrol officer testified that he observed the co-defendant's "fresh" bloody toe and agitated state.  ECF No. 11-3 at 45, 50.  He also testified about the clothing

found in Green's vehicle which matched the description of the clothing worn by the two suspects, which included a red bandana.  ECF No. 11-3 at 45. A second police officer testified about the evidence recovered from the crime scene, which included evidence of a forced entry and a shooting.  *Id*. at 67-71.  A third police officer testified to the victim's photo-lineup identification of both Green and Green's clothing.  *Id*. at 117-120.

At the beginning of day two of the trial, the Court asked defense counsel if they had discussed with Green the issue of his testifying at trial, to which counsel replied, "Most certainly."  ECF No. 11-3 at 141 ¶15-18. The Court advised Green that the decision to testify was ultimately his decision: "[I]f you have any questions about [testifying] that you want to discuss in more detail with your attorney, be sure to do that…if you have any issues that you've not already resolved, because I will need to put" your decision on the record.  *Id*. at 142 ¶¶ 7-12.

During the second day of trial, Green's co-defendant, Burnice Jackson, testified in the state's case-in-chief to the following facts: (1) Jackson broke down the victim's door on the night in question, (2) Jackson participated in the attempted robbery, (3) that the purpose of the break-in was to steal drugs, (3) that Jackson fought with the victim that night, and (4) Jackson had pleaded guilty to his charges.  ECF No. 11-3 at 162-68.

Defense counsel did not cross-examine Jackson but reserved the right to recall him.  *Id*. at 168.

In its case-in-chief, the defense called two witnesses.  First, the defense called a narcotics detective who testified that he met the victim at the hospital on the night of the shooting to seek his consent to a search of his home.  ECF No. 11-3 at 173. The second defense witness was a neighbor of the victim, who is different from the one who testified in the state's case-in-chief.  This neighbor testified that he heard a gunshot on the evening of December 11, 2012 and then observed a skinny tall man wearing silver metallic pants exit the vicinity of the victim's home. The skinny tall man was followed by a heavier shorter man.  Both men ran away in the same direction, and the neighbor called 911. *Id*. at 180-81.

After these two witnesses testified, defense counsel asked for a 10-minute recess to discuss the matter of Green's taking the stand.  *Id*. at 189. After the recess, Green was sworn in by the Court.  The Court asked Green whether he sufficiently understood the consequences of testifying and not testifying such that he had reached a decision about taking the stand.  ECF 11-3 at 190.  Green said that he understood the consequences of each option and had decided not to testify in his own defense.  *Id*.

After the trial, the jury convicted Green on both counts, and the trial court adjudged him guilty.  ECF No. 11-1 at 154.

Green moved for disqualification of the trial judge on two grounds. ECF No. 11-6 at 162-162.  First, Green argued that the trial judge improperly commented to the jury after the trial's conclusion that "the guilty verdict confirmed the judge's faith in the judicial system" and that the judge "was glad the jury found the Defendant guilty because during the whole trial he thought that the Defendant was guilty, too."  ECF No. 11-6 at 163. Second, Green claimed that a Sheriff's deputy overheard the trial judge admonish the state attorney to "do a better job" and not to "depend on the defense to call witnesses for the state" in the future.  *Id*.  Green argued that these statements showed the judge's bias against him.  The trial court denied the disqualification motion.  ECF No. 11-6 at 168-69.

Green was sentenced to twenty-five (25) years' imprisonment to be followed by ten (10) years of drug offender probation.  ECF No. 11-1 at 227.  Green appealed. ECF No. 11-1 at 245.  The Florida First District Court of Appeals ("1st DCA") affirmed in part and reversed in part.  ECF No. 11-5 at 76-77.  While affirming his conviction and sentence, the 1st DCA reversed Green's drug offender probation as he was not eligible to receive it (which the State conceded).  *Id*.

Judge Benton dissented to the Court's affirmance of Green's

conviction, arguing that the conviction should be reversed on the grounds

that Defendant's counsel's objection to the lay opinion testimony offered at

trial should have been sustained.[4]  ECF No. 11-5 at 78.  Notwithstanding

Judge Benton's dissent, the 1st DCA affirmed Green's conviction and

sentence.  ECF No. 11-5 at 77.

Green, through counsel, then filed a post-conviction motion under

Fla. R. Crim. P. 3.800(b)(2) and a memorandum in support.  ECF No. 11-4

at 136-143.  After giving Green the opportunity to amend some of his

---

[4] The lay opinion testimony at issue was Detective Lormil's testimony about the victim's body language during questioning:
.

> Q:      In this case, did you notice anything about Mr. Johnson's body language as you were talking to him that…
>
> Defense Objection: Speculation.  And she just said sometimes, so…
> Court: Overruled.  If she's able to….
> Q:      Did you notice anything about, maybe, Mr. Johnson's body language as you're talking to him?
>
> A:      Yes, sir.
>
> Q:      What did you notice?
>
> A:      When I was asking him specific questions as to if he had any idea who was doing it, it's almost like his mouth was saying no, but his body was saying that he most likely knew who had something to do with [the crime] or was thinking of who he would probably go talk to next to see if he can figure out who did it.

ECF No. 11-6 at 296-97.

deficient challenges, ECF No. 11-6 at 117-132, the post-conviction court

denied all of Green's claims. ECF No. 11-17 at 113-133.  Green appealed

some (but not all) of his claims, and the 1st DCA affirmed.  *Malik Green v.*

*State of Florida*, No. 1D17-207 (Fla. 1st DCA Mar. 21, 2018) (per curiam).

ECF No. 11-15 at 2-3.

In the instant Petition, Green contends that his trial counsel was

constitutionally deficient in eight ways resulting in Petitioner not receiving

a fair trial. Of the eight claims four of them are procedurally defaulted and

one of them is partially defaulted as discussed below.

## III.   SECTION 2254 EXHAUSTION REQUIREMENT

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state post-conviction motion.  28

U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state

courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate review

process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly

exhaust a federal claim, a petitioner must "fairly present" the claim in each

appropriate state court, thereby affording the state courts a meaningful

opportunity to "pass upon and correct alleged violations of its prisoners'

federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### A.   Unexhausted Ineffective Assistance Claims

In his unexhausted claims, Green contends that trial counsel was

constitutionally ineffective for (1) failing to challenge his "illegal sentence" (Ground Five) ECF No. 1 at 17; (2) failing to object to prejudicial photos of Petitioner introduced at trial (Ground Six) *id*. at 18; (3) failing to make arguments in support of Petitioner's motion to suppress evidence (Ground Seven) *id*. at 21; (4) failing to properly impeach a witness at trial (Ground Eight) *id*. at 23; and (5) failing to present or question certain witnesses at the suppression hearing (part of Ground Two) *id*. at 9.

Although Green raised each of these claims during his post-conviction proceedings, he failed to appeal their denial. Because Green's judgment became final on June 19, 2018, he is procedurally barred from returning to state court to attempt to re-assert these unexhausted claims. Fla. R. Crim. P. 3.850(b) ("A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final. . . ."). *See also* Fla. R. App. P. 9.141(b)(1) ("Appeal proceedings under this subdivision shall be as in civil cases, except as modified by this rule."); Fla. R. App. P. 9.110(b) ("Jurisdiction of the court under this rule shall be invoked by filing a notice, accompanied by any filing fees prescribed by law, with the clerk of the lower tribunal within 30 days of rendition of the order to be reviewed. . . .").

Consequently, Green's unexhausted claims are procedurally defaulted. *Corn v. McNeil,* Case No. 3:08-cv-199-MCR-EMT, 2010 WL 5811434 at *17 (N.D. Fla. Nov. 24, 2010) (collecting cases), *report and recommendation adopted*, 2011 WL 588713 (concluding "that the Florida procedural rule deeming as waived or abandoned those claims for which an appellant has not presented any argument in his [postconviction] appellate brief (or for which he provides only conclusory argument), even when the insufficiently presented claims were summarily denied by the trial court, is a firmly established and regularly followed procedural rule for purposes of federal habeas."). *See also Bailey v. Nagle,* 172 F.3d 1299, 1305 (11th Cir. 1999) ("federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.") (*citing Snowden v. Singletary,* 135 F.3d 732, 737 (11th Cir. 1998)).

Having concluded that this Court cannot review Grounds Five, Six, Seven, Eight and part of Ground Two, because the claims are procedurally defaulted the Court turns now to the exhausted ineffective assistance claims in Grounds One, Two (exhausted portion), Three and Four.

## IV. FEDERAL HABEAS STANDARD OF REVIEW[5]

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances. Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d). *See also Cullen v. Pinholster,* 563 U.S. 170, 131 S.Ct.

1388, 179 L.Ed.2d 557 (2011); *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th

Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

---

[5] See *Carr v. Jones*, Case No. 1:15cv227, 2017 U.S. Distr. LEXIS, at *5-11 (N.D. Fla. Jun. 6, 2017) (laying out the appropriate standard of review for a federal habeas petition where the state court has previously denied Petitioner's ineffective assistance of counsel claims).

than this Court has on a set of materially indistinguishable facts." *Williams*

*v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389

(2000) (O'Connor, J., concurring). "Under the 'unreasonable application'

clause, a federal habeas court may grant the writ if the state court identifies

the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id.*

at 413. (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

*Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624

(2011). The Court stated:

> As amended by AEDPA, §2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . . It preserves authority to issue
> the writ in cases where there is no possibility fairminded jurists
> could disagree that the state court's decision conflicts with this
> Court's precedents. It goes no further. Section 2254(d) reflects
> the view that habeas corpus is a "guard against extreme
> malfunctions in the state criminal justice systems," not a
> substitute for ordinary error correction through appeal. *Jackson
> v. Virginia*, 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d
> 560 (1979) (Stevens, J., concurring in judgment). As a condition
> for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim
> being presented in federal court was so lacking in justification
> that there was an error well understood and comprehended in
> existing law beyond any possibility for fairminded disagreement.

*Id. at* 102-03 (citation omitted). The federal court employs a "'highly

deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Pinholster*, 563 U.S. at 181 (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)).

## A.    Ineffective Assistance of Counsel Claims

For ineffective assistance of counsel claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland*, 466 U.S. at 690).  Federal courts are to afford "both the state court and the defense attorney the benefit of

the doubt." *Id.* at 13. The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct. *See Maryland v. Kulbicki*, 136 S.Ct. 2, 4, 193 L.Ed.2d 1 (2015) (citing *Strickland*, 466 U.S. at 690).

To demonstrate prejudice under *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Mirzayance*, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth

Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. *Strickland*, 466 U.S. at 697.

## V.   DISCUSSION

Applying *Strickland*, the postconviction court analyzed each of Green's ineffective assistance claims as follows:

> In order to make out a prima facie case for ineffective assistance of counsel, a defendant must assert that trial counsel's performance did not comply with prevailing standards of professionalism which proved detrimental to the defendant. *Strickland v. Washington*, 466 U.S. 668, 691-92 (1984).  If the movant does not point to prejudice the court need not make a ruling on the performance component, and vice versa.  *Johnson v. State*, 593 So.2d 206, 209 (Fla. 1992). Furthermore, when alleging ineffective assistance of counsel, a defendant must plead unprofessional error and prejudice with specificity. *See Smith v. State*, 445 So.2d 323, 325 (Fla. 1983); *see also Cunningham v. State*, 748 So.2d 328, 330 (Fla. 4th DCA 2000) (citing *Knight v. State*, 394 So.2d 997, 1001 (Fla. 1981)) (when claiming deficient performance, "the specific omission or overt act upon which the claim of ineffective assistance of counsel is based must be detailed in the appropriate pleading").  It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 693.  The defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Id.* at 698.

ECF No. 11-17 at 115-16.  The state court, therefore, applied the correct standard when evaluating each of the claims set forth below.

### *Ground 1: IAC for Misadvice Regarding Defendant's Testifying at Trial.*

Ground One rests on trial counsel's affirmatively misadvising Green that, if he testified at trial, the jury would learn about the details of his criminal history. ECF No. 1 at 3.  Green contends that his decision not to testify at trial was based solely upon counsel's erroneous advice regarding the jury's ability to hear details about his two former violent crimes.

Under Florida law, when a defendant testifies on his own behalf at trial, his prior convictions are admissible but the details concerning the prior convictions are inadmissible.  *See Livingston v. State*, 682 So.2d 591, 592 (Fla. 2nd DCA 1995).  Misadvising a defendant about the extent to which details of his prior convictions can be admitted at trial constitutes deficient performance.  *Tyler v. State,* 793 So.2d. 137, 141 (Fla. 2d DCA 2001) (citing *Everhart v. State*, 773 So.2d 78, 79 (Fla. 2nd DCA 2000)).

Applying *Tyler*, the post-conviction court found counsel's performance deficient in this regard. ECF No. 11-7 at 125. The post-conviction court also found, however, that Green failed to establish that the outcome of the trial would have been different had he testified.

Green says that, absent counsel's misadvice, he would have testified that (1) he had no knowledge or participation in the crimes, (2) he was not familiar with the victim, and (3) he was with an someone else at the time

the crimes were committed.  *Id*. at 125.  In short, Green says he would

have testified that he "didn't do it."  In denying this ineffective assistance

claim, the post-conviction court reasoned:

> According to Defendant, the witness with whom he was with
> (sic) while the charged offenses were occurring was a male
> named "Ouwee Trower."  However, at the time of the traffic
> stop, Defendant provided the names of two other persons
> whom he claimed to be with at the time of the charged
> offenses…. It is significant that, at the time of the traffic stop,
> Defendant changed his original alibi witness to one that his co-
> defendant Burnice Jackson had provided to law enforcement….
> Defendant would have had no reason to change his alibi
> witness to fit the alibi witness of Mr. Jackson unless he had
> participated in the charged offenses.  This Court additionally
> notes that Mr. Jackson indicated in his deposition that
> Defendant knew the victim.  For these reasons, counsel did not
> err in failing to call Defendant as a defense witness at trial.

ECF No. 11-17 at 126.

In his Petition, Green says that he can establish prejudice because

his proposed testimony would have placed the case in a different light,

warranting an acquittal. ECF No. 1 at 6.  Green further submits that his

counsel's erroneous advice resulted in a denial of his constitutional right to

testify. *Id*.[6]

---

[6] Petitioner does not argue that his waiver of his right to testify was not voluntarily,
knowingly and freely made. Rather, the issue here is whether Petitioner's testimony at
trial would have changed the outcome.

The right to testify arises in the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment and is a corollary to the Fifth Amendment's guarantee against compelled testimony. *Lott v. State*, 931 So. 2d 807, 817-18 (Fla. 2006) (per curiam) (*citing Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987)). A criminal defendant makes the fundamental decision as to whether to testify in his own behalf. *Lott v. State*, 931 So. 2d at 817 (*citing Jones v. Barnes*, 436 U.S. 745, 751 (1983)).

In the case at hand, the trial court conducted a brief colloquy with Green concerning his decision about whether he wanted to testify or not. ECF No. 11-3 at 190. Green apprised the court that he understood the consequences attendant to both testifying and not testifying and chose not to testify. *Id*. At the time of trial, Green had two felonies in his criminal background, and both were crimes of violence (stabbing and home-invasion robbery). *See* 11-2 at 154. *See also Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Indeed, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id*.

In considering a claim of ineffective assistance of counsel, the reviewing court must apply a heavy measure of deference to counsel's judgments.  After reviewing the trial transcript, the post-conviction motions and orders, and the record on appeal (and presuming Green satisfied the first prong of *Strickland*), this Court concludes that Green failed to show that had he taken the stand, there is a reasonable probability he would have been acquitted.  That is because the record squarely contradicts Green's purported testimony that "he didn't do it".

First, the victim, who had known Green for more than ten years, identified Green as the shooter from a photo line-up and in open court. Second, minutes after the crimes, Green was stopped by police driving a car that matched the get-away car's description.  And, notably, his passenger was the co-defendant who admitted to committing the crimes. Third, the clothing items retrieved from Green's vehicle matched three eye-witnesses' description.  Finally, the testimony about Green's unusual height (6'2"-6'3"), his unusual eye color, and his light skin complexion solidified his identification by witnesses who knew him (despite his having masked his lower face with a bandana).

As stated earlier, in a § 2254 proceeding, "'[t]he question 'is not whether a federal court believes the state court's determination' under

the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Mirzayance,* 556 U.S. at 123 (quoting *Schriro*, 550 U.S. at 473). The state court has wide latitude to reasonably determine that a defendant has not satisfied this doubly deferential *Strickland* standard. *See Mirzayance*, 556 U.S. at 123.

In sum, the Court concludes that the Florida state courts' decision to deny this ineffective assistance claim is not contrary to or an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, federal habeas relief for Ground One is due to be denied.

### Ground 2: IAC for Failure To Call Witnesses at Trial

Green's second ineffective assistance claim centers on trial counsel's failure to call three defense witnesses to testify at trial: (1) co-defendant Burnice Jackson, (2) alleged "actual" perpetrator Deonte Timmons, and (3) crime scene investigator, Officer Marc Trahan.[7]  ECF No. 1 at 9.

The post-conviction court rejected this claim as to each witness. First, Green's co-defendant Jackson testified in the state's case-in-chief

---

[7] In his Petition, Green includes alleged alibi witness Ouwee Trower should have been called as a witness at trial. But, that claim is unexhausted. Green only allowed the state courts to pass on whether Trower should have been called as a witness the suppression hearing (not at trial). So, this Court may not review this claim with respect to counsel's failure to call Trower to testify at trial. *See* ECF No. 11-7 at 123.

that he participated in the crimes and was convicted of them.  Green

argued that had defense counsel called Jackson to testify in its case-in-

chief, Jackson would have testified that Deonte Timmons (not Green)

committed the crimes.  The post-conviction court, however, concluded that

Jackson's purportedly exculpatory testimony directly contradicted the

evidence in the case because (1) Timmons does not match the victim's

description of the perpetrator and (2) the victim knew Green and identified

him as the shooter.  The court thus found Jackson's theoretical testimony

not credible. ECF No. 11-17 at 118-19.  As a result, defense counsel did

not err by failing to cross-examine or call Jackson as a defense witness.

*Id*. at 119.

As for Deonte Timmons, the post-conviction court concluded that his

testimony would not have inured to Green's benefit, as Green, not

Timmons, fits the victim's description of the perpetrator, which would have

been obvious to the jury.  ECF No. 11-7 at 120.  Consequently, defense

counsel did not err in failing to call Timmons as a defense witness at trial.

*Id*.

As for Officer Trahan, the post-conviction court rejected the notion

that his testimony would have helped the defense.  Office Trahan testified

in the state's case-in-chief that the shooting took place inside the victim's

home somewhere within the first foot or two of the entry way, which is consistent with the victim's own testimony.  Green, however, claimed that had defense counsel called Officer Trahan to testify in its case-in-chief, Office Trahan would have testified that the shooting actually took place six feet outside of the home.  ECF No. 11-17 at 122.  The post-conviction court rejected this argument as insufficient to establish either deficient performance or prejudice.  *Id*.

Upon careful review, this Court agrees that, under *Strickland*, defense counsel's failure to call these three witnesses at trial was neither deficient nor prejudicial.  Here, as was true with Ground One, the state courts' decision to deny this ineffective assistance claim is not inconsistent with Supreme Court precedent, including *Strickland* and its progeny, and its adjudication of this claim is not contrary to or an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, federal habeas relief for Ground Two is due to be denied.

### Ground 3: IAC for Failure To File a Petition for Writ of Prohibition.

Green's third ineffective assistance claim rests on defense counsel's failure to file a petition for writ of prohibition after the trial court denied his motion for disqualification.  In denying this claim, the post-conviction court found that nothing the trial court said to the jury supported Green's motion

for disqualification, especially in light of the fact that the comments complained-of occurred after the trial was over.  ECF No. 11-7 at 130. Moreover, the court's post-trial general trial practice advice to the prosecutor did not evince any bias against the defendant or any attempt by the court to act as prosecutor, citing *Turner v. State*, 745 So.2d. 456, 458 (Fla. 4th DCA 1999).  ECF No. 11-7 at 130.  The post-conviction court thus concluded that Green failed to show that a writ of prohibition would have been granted if defense counsel had filed one.  *Id*.

In his Petition, Green relies solely on Florida state law, arguing that the 1st DCA would have granted the writ of prohibition had defense counsel filed one.  *See* ECF No. 1 at 12-15.  Green does not cite to any federal constitutional right or law to support this claim.

A habeas petition grounded on issues of state law provides no basis for habeas relief because a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution.  *Engle v. Isaac*, 456 U.S. 107, 120-21 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989).  A federal writ of habeas corpus is available only in cases of federal constitutional error. *See Jones v. Goodwin,* 982 F.2d 464, 471 (11th Cir.1993); *Krasnow v. Navarro,* 909 F.2d 451, 452 (11th Cir.1990).  The limitation on federal habeas review applies with equal force when a petition,

which truly involves only state law issues, is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508.

Here, Petitioner challenges the application of Florida's administrative judicial rules governing disqualification of a trial judge and state case law construing those rules. This claim, therefore, is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a); *Engle*, 456 U.S. at 120-21; *Branan*, 861 F.2d at 1508.

Accordingly, federal habeas relief as to Ground Three is due to be denied.

### *Ground 4: IAC for Failure To Object to Lay Opinion Testimony.*

Green's fourth ineffective assistance claim derives from trial counsel's failure to object to and request a mistrial when the victim gave the following lay opinion testimony during the state's case-in-chief:

Q:  And you said that you had some experience with, kind of, the rules of the street?

A:  Yes.

Q:  Is it common for people to change their clothes after committing a crime?

A:  Yes.

Q:  And why is that?

A:  Because they don't want to get caught in the same clothes they were just in when they committed a crime.

ECF No. 1 at 15.

The post-conviction court found this testimony to be proper because the victim testified generally that it is common for people who commit crimes to change their clothes afterwards.  ECF No. 11-17 at 132.  The victim did not testify that Defendant, himself, changed his clothes after the crime.  *Id*.

This Court must defer to the state courts' determination that the victim's testimony was proper under Florida law.  *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (2001) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Anderson v. Sec'y for the Dep't of Corr.,* 462 F.3d 1319, 1330–31 (11th Cir. 2006) (state's interpretation of its own laws or rules provides no basis for federal habeas relief); *Sims v. Singletary,* 155 F.3d 1297, 1308 (11th Cir. 1998) ("We will not challenge a state court's determination of state law."), *cert. denied,* 527 U.S. 1025, 119 S.Ct. 2373, 144 L.Ed.2d 777 (1999); *Osborne v. Wainwright,* 720 F.2d 1237, 1238 (11th Cir.1983).

Accordingly, federal habeas relief on Ground Four is due to be denied.

Having carefully considered all of Green's unexhausted ineffective assistance of counsel claims, this Court concludes that none of them warrants the extraordinary relief of a writ of federal habeas corpus.

## VI.   CERTIFICATE OF APPEALABILITY

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VII.   CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF

No.1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** in Gainesville, Florida, this 18th day of January 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES[8]**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

---

[8] Upon review of the Florida DOC online inmate locator, it appears that Petitioner is currently confined at the Hardee Work Camp.  The Clerk is directed to forward a copy of this Report and Recommendation to his address of record with the Court and to the Hardee CI.